IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| DIANE HOULDITCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-G-0379-J |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

The plaintiff, Diane Houlditch, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations

omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

>   (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord  McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Jerome L. Munford, determined the plaintiff met the first two tests, but concluded  did not suffer from a listed impairment.  The ALJ found the plaintiff was able to perform her past relevant work, and accordingly found her not disabled.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons

4

are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## DISCUSSION

The plaintiff was 56-years-old at the time of the ALJ's decision. In the present case the ALJ found that the plaintiff has the following severe impairments: cervicalgia; low back pain; bilateral carpal tunnel syndrome; and depression. [R. 16]. On November 12, 1999, the plaintiff was diagnosed with a herniated nucleus pulposus with spondylosis of C4/5, C5/6, and C6/7. [R. 201]. That same day, H. Evan Zeiger, M.D., performed a "[t]hree-level micorsurgical anterior cervical diskectomy and fusion, C4/5, C5/6 and C6/7 with Synthes plate internal fixation, 54-mm 3-level plate x 8 14-mm screws." [R. 197]. Dr. Zeiger gave routine discharge instructions and prescribed Lortab as needed for pain. [R. 195].

The plaintiff alleges an onset date of December 1, 2004. However, there is a seven-year gap in medical treatment records from her neck surgery in November 1999 to January 2007, when the plaintiff presented at Whatley Health Services for treatment from Debra Develin, a certified registered nurse practitioner.[1] [R. 213-214]. Nurse

---

[1] Certified registered nurse practitioners are not acceptable medical sources for proving the claimant has a severe impairment. Once medical evidence establishes the presence of a severe impairment, however, their testimony may be utilized to show how a claimant's impairment affects her ability to work.. 20 CFR § 404.1513. As the ALJ found that the plaintiff had the medically determinable severe impairments of cervicalgia and low back pain, Nurse Develin's testimony is relevant to show how her impairments affect her ability to work.

Develin noted depression and anxiety and cervical disk disease. [R. 214]. On February 13, 2008, the plaintiff's attorney deposed Nurse Develin:

> Q: How often have you treated her on an average basis, once a month, once every three months?
>
> A: Anywhere from once every two to three months.
>
> Q: Okay. And do you know how many years you've been seeing her?
>
> A: For two years.
>
> Q: Okay. What is her primary diagnosis?
>
> A: Cervical disc disease is her primary diagnosis at this time.
>
> Q: Okay. And that involves, I guess, a degenerative disease of the connective tissue in the back?
>
> A: That's right.
>
> Q: Does she suffer from pain?
>
> A: She suffers with a great deal of pain.
>
> Q: Okay. Would you say that she suffers from severe pain?
>
> A: Severe pain most of the time. She not only suffers with neck pain, but because of the cervical spine and the impingement of the nerves that intertwine the cervical spine, it also increases her frequency of headaches; so not only have neck pain and muscle spasms been a problem, but the headaches have been difficult to manage, too.
>
> Q: Okay. What would you say her pain level is on an average day on a scale of one to ten?

> A: Probably on most days, about a seven or eight. When she's in the clinic, she reports – the majority of the time, she says her pain is over a five, anywhere around seven to nine or ten.
>
> Q: Is she consistent with her complaints?
>
> A: Consistent each time, and we've treated her with antiinflammatories, muscle relaxers, and even nerve – something for anxiety and depression because of the chronic pain.

[R. 233-235]. In his decision, the ALJ stated:

> I have considered the opinions of Ms. Develin but do not regard them as persuasive because they are not supported by acceptable clinical findings or laboratory diagnostic techniques. Moreover, her opinion is inconsistent with the more credible other medical evidence of record . . . .

[R. 17]. This statement is not supported by substantial evidence.

On August 8, 2007, Kristi Yarbrough, Psy.D., a licensed psychologist, performed a consultative psychological examination of the plaintiff at the behest of the Commissioner. Dr. Yarbrough's diagnosis was Major Depressive Disorder, Recurrent, Severe without Psychotic Features.[2] [R. 192]. Dr. Yarbrough found the plaintiff's GAF

---

[2] A diagnosis of severe depression is strongly indicative of an inability to work. For example, the Diagnostic and Statistical Manual of Mental Disorders describes the criteria for assigning the specifier "Severe Without Psychotic Features" to a major depressive episode: "Episodes that are *Severe Without Psychotic Features* are characterized by the presence of most of the criteria symptoms and clear-cut, observable disability (e.g., inability to work or care for children)." 412 (4th Edition, Tex Revision) ("DSM-IV-TR") (italics in original)(emphasis added).

to be 45-50,[3] which she described as being a "severe impairment." [R. 192]. Dr. Yarbrough noted:

> Ms. Houiditch [sic] prognosis is poor. Her lifelong chronic problems with depression are likely to continue. Her physical condition does not look to be improving and as she ages will likely only further deteriorate.
>
> \*   \*   \*   \*
>
> Ms. Houiditch [sic] was cooperative with the entire examination process. She was friendly and outgoing with the examiner and appeared honest in her responses. She was fully motivated to provide all information request[ed] of her. This report is viewed as reliable.

---

[3] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 30 (4th Edition) ("DSM-IV"). A GAF of 41-50 indicates: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32. Several courts of appeal have, in unpublished or nonprecedential opinions, considered the impact of a claimant's GAF score of 50 or below. The courts generally find that a GAF score of 50 or below is not in and off itself determinative of disability. See Hillman v.Barnhart, 48 Fed Appx. 26, 2002 WL 31260962 at * 3, n.1(3rd Cir. 2002)(not precedential)(noting that a GAF of 50 would indicate a claimant could perform some substantial gainful activity); Rutter v. Comm'r of Soc. Sec., 91 F.3d 144 (Table), 1996 WL 397424 at *2 (6th Cir. 1996)(unpublished opinion)(exclusive reliance on GAF score not appropriate); Roemmick v. Shalala, 59 F.3d 176 (Table), 1995 WL 299894 at *2, n.1 (9th Cir. 1995)(noting that an inability to work is only one example of the level of adaptation meriting a GAF of 40); Seymore v. Apfel, 131 F.3d 152 (Table), 1997 WL 7555386 at *2 (10th Cir. 1997)("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work.); Stalvey v. Apfel, 242 F.3d 390 (Table), 2001 WL 50747 at *2 (10th Cir. 1999)("The GAF is not an absolute determiner of ability to work."). But cf. Lloyd v. Barnhart, 47 Fed. Appx. 135, 2002 WL 31111988 at *1, n.2 (3rd Cir. 2002)(not precedential)(noting that a vocational expert at the administrative hearing testified that a GAF of 50 or lower would indicate claimant would not be able to keep a job).

>    *       *       *       *
>
>    . . . Ms. Houiditch [sic] does not appear mentally impaired in her ability to
>    carry out and remember job related instructions, she does report a recent
>    worsening of memory and memory related issues.  Ms. Houiditch [sic]
>    would be able to deal appropriately with job supervisors and coworkers as
>    her issues do not relate to her ability to deal with others.  <u>However, her high
>    levels of chronic pain and its effect on her lifelong struggle with depression
>    are going to greatly effect [sic] her ability to perform job duties on a
>    consistent basis.</u>

[Id.].(emphasis added)

Despite Dr. Yarbrough's opinion that the plaintiff's pain and depression would significantly affect the plaintiff's ability to work, the ALJ chose to ignore his own consultative examiner to find that "her pain and depression are expected to reasonably impose no greater than mild to moderate functional limitations upon her ability to perform basic work activities. . . ." [R. 18].  A careful review of the ALJ's decision shows that he ignored the extensive evidence showing the plaintiff had more than a moderate impairment because of her pain and depression.  For example, Dr. Yarbrough assessed the plaintiff's GAF at 45-50, but the ALJ did "not consider her reported GAF scores the sole dispositive factor towards assessing the overall severity or degree of her mental impairment."  [Id.].  The ALJ stated:

>    . . . the clinical findings arising from Dr. Yarbrough's evaluation disclosed
>    that the claimant demonstrated normal thought processes, and no significant
>    problems with concentration, attention, memory functioning, thought
>    content, judgment or insight.  In fact, Dr. Yarbrough reported that the
>    claimant did not appear mentally impaired in her ability to carry out and
>    remember job related instructions.  She also opined that the claimant would

> be able to deal appropriately with job supervisors and co-workers as her issues did not relate to her ability to deal with others . . . .

[Id.]. However, Dr. Yarbrough clearly qualified her opinion by stating that the plaintiff's "high levels of chronic pain and its effect on her lifelong struggle with depression are going to greatly [affect] her ability to perform job duties on a consistent basis." [R. 192].

The present case bears a resemblance to the situation in Wilder v. Chater, 64 F.3d 355 (7th Cir. 1995). In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner. The Wilder court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself to advise on Wilder's condition. . . . The psychiatrist's testimony, though conclusional (but then no one pressed him to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling depression. Severe depression is not the blues. It is a mental illness; and <u>health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it</u>. The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and <u>the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight</u>. We do not say conclusive weight; but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

Id. at 337 (emphasis added)(citations omitted). In the present case, ALJ Munford again has substituted his medical opinions for those of the Commissioner's psychological consultant. The ALJ also had the opportunity to elicit additional medical evidence as to the plaintiff's mental impairment, but chose not to do so. See Jenkins v. Sullivan, 906

F.2d 107, 109 (4th Cir. 1990)(noting the ALJ improperly analyzed the medical evidence himself rather than eliciting additional medical testimony from physicians).

An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement. He is not free to base his decision on unstated reasons or hunches. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer <u>abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians</u>: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity*; however, as a hearing officer <u>he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional</u>.
>
> Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand. . . .
>
> Although Social Security disability benefits must be reserved only for those who qualify to receive them, <u>an ALJ may not arrogate the power to act as both judge and physician</u>. The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and instead satisfies himself with merely serving as a judge.

957 F.2d 837, 840-41 (11th Cir. 1992)(italics in original)(emphasis added).

11

Although Dr. Yarbrough does not qualify as treating source under the Commissioner's regulations, the ALJ is still required to consider her opinion. 20 C.F.R. § 416.927(d). Because she is a specialist, her opinion is entitled to more weight.[4] The thoroughness of her report also entitles it to greater weight.[5] Rather than accepting the opinion of Dr. Yarbrough, which clearly establishes disability, the ALJ "succumbed to the temptation to play doctor and make [his] own independent medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).

This court has often noted ALJ Munford's improper substitution of his medical opinions for those of trained medical professionals in cases involving mental illness. See eg., Jiles v. Commissioner of Social Security, 2006 WL 4402937 (N.D.Ala.)(listing six other cases in which ALJ Munford had improperly substituted his judgment for mental health care professionals and expressing the hope that such errors would not be repeated in the future)[6]. In the present case, the ALJ appears to have gone out of his way to ignore the opinions of his own consultant, Dr. Yarbrough, and that of Nurse Develin, as to the effect of the plaintiff's impairments on her ability to work. The cumulative impact of these opinions, which the ALJ did not properly reject, along with

---

[4] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist." 20 C.F.R. § 404.1527(d)5)

[5] See 20 C.F.R. § 404.1527(d)(3)(well supported opinions entitled to more weight).

[6] Considering the Jiles case and the present case, the number is now eight.

the vocational expert's testimony, is that the plaintiff would be unable to perform any substantial gainful activity.  This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded benefits based upon an onset of disability as of August 8, 2007, the date of Dr. Yarbrough's consultative psychological examination.  Id.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 4 March 2010.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.